Case 75.—CONTEST OVER TWO PAPERS PURPORTING TO BE THE WILL OF OSCAR P'POOL, DECEASED.—December 5.

## P'Pool's Ex'or v. P'Pool's Ex'tx.

Appeal from Trigg Circuit Court.

THOS. P. COOK, Circuit Judge.

From the judgment the executor appeals. Affirmed.

Wills—Re-execution—P'Pool executed two wills, one of date October 6, 1900, and one January 15, 1901. On the 25th of October, 1901, he took the first will to the county clerk of his county, who, together with his deputy, witnessed the signature of P'Pool. At his death both wills were offered for probate. Held—His undertaking to have the paper re-executed by having his signature attested by the witnesses was a substantial compliance with the statute.

HAZELRIGG & HAZELRIGG and G. P. THOMAS for appellant.

The signature to the first will when it was revoked was dead, and if this is true, it could never have been revived except by a new signature, which it is not claimed was done. (Maxwell v. Maxwell, 3 Met., 101; Dougherty v. Dougherty, 4 Met., 25; Stewart v. Mulholland, 88 Ky., 38.)

JAMES B. GARNETT, DENNY P. SMITH and R. A. BURNETT for appellee.

We submit that there are only three ways in which a will can be revoked under our statute, sec. 4833. 1st. By marriage, sec. 4832. 2d. By a subsequent will or writing, declaring an intention to revoke, and executed in the same manner that a will is required to be executed. 3d. By testator, or some one for him, destroying the will. Ky. Stats., sec. 4833.

The testator in the second will, of January 15, 1901, in express terms, revokes all former wills.

Did the attestation of this paper, by the two witnesses, Grasty and Brandon, after it had been revoked, add anything to its legality more than the parol proof of these two witnesses that the testator acknowledged and recognized this paper at that date, in their presence, as his will?

It must be admitted this would not have amounted to an execution under the statute. (Ky. Stats., secs. 4834, 4828; sec. 22, Statute of Victoria; Maxwell v. Maxwell, 3 Met., 90, citing the case of Tharp & Wooldridge, 14 Gratton [Va.]; Stewart v. Mulholland, 10 Ky. Law Rep., 824; Dougherty v. Dougherty, 4 Met., 25; Porter v. Ford, 82 Ky., 38.)

OPINION BY JUDGE BARKER—Affirming.

Oscar P'Pool, a resident of Cerulean Springs, Trigg county, Ky., on the 6th day of October, 1900, executed in due form a holographic will, by which he devised $500 to his mother and the rest of his property to his wife, Mary L. P'Pool, now Mary L. Gardner. On the 15th day of January, 1901, at the home of his mother, near Hopkinsville, Ky., he executed in due form another holographic will, by which he devised his property equally to his wife and his mother, Mrs. C. B. Armstrong. On the 25th day of October, 1901, he obtained from his wife the will bearing date October 6, 1900, and carried it to Cadiz, Ky., and there presented it to F. K. Grasty, the county clerk of Trigg county, with request that he witness the testator's signature, which was done by Grasty writing the word "witness" at the end of the document and under it signing his name. The testator then presented the document to George Brandon, the deputy of Grasty, with the request that he also witness his signature, which was one by Brandon's writing his name under that of his principal. Thereupon P'Pool carried the paper home with him and delivered it to his wife, saying that it expressed the disposition that he desired to make of his property. Af-

terwards Oscar P'Pool died, and both of the papers purporting to be his last will and testament were offered for probate in the county court of Trigg county. The judgment of this tribunal admitted the paper of January 15, 1901, to probate, and rejected the other. Upon appeal to the circuit court this judgment was reversed, and the paper witnessed by the county clerk and his deputy on the 25th day of October, 1901, was adjudged to be the last will and testament of the decedent, from which this appeal is prosecuted.

The question presented is one purely of law, there being no issue as to the facts above stated. Undoubtedly the will dated October 6, 1900, was expressly revoked by that dated January 15, 1901, and the sole question here is whether or not what was done by the decedent on the 25th day of October, 1901, at the office of the county clerk, was a sufficient re-execution of the revoked will to meet the requirements of the statute governing the subject. Section 4828, Ky. Stats. 1903, provides: "No will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator." Section 4833: "No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, or by the testator, or some person in his presence, and by his direction, cutting, tearing, burning, obliterating, cancelling or destroying the same, or the signature thereto, with the intent to re-

voke." Section 4834: "No will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived, otherwise than by re-execution thereof, or by a codicil executed in the manner hereinbefore required; and then only to the extent to which an intention to revive the same is shown thereby."

Neither of the witnesses to the instrument under consideration knew its contents, or that it was a will they were witnessing. It seems to us that this case is concluded by the principle settled in Flood v. Prag-off, 79 Ky., 607, 3 Ky. Law Rep., 372. There the question was whether a codicil, not written by the testator, which revoked a large part of the will, had been properly executed under the statute. In that case the facts as to the witnessing were substantially identical with those at bar. The testator called Howard and Deppen into the office of Pragoff to witness his signature to the paper offered as a codicil, and each of them, at his request, signed the paper in his presence and in the presence of Pragoff. Usher having previously signed his name in their presence. Neither saw any writing above the signature of the testator, or knew that it was a will. It was contended by the contestants that these facts did not show a sufficiently literal compliance with the statute to constitute the paper in question the will of the testator. But was held that a substantial compliance with the statute was sufficient, and that the codicil in question (there being no other objection) was sufficiently executed. It is not necessary to reproduce the reasoning of the opinion. It is sufficient to say that it fully covers the question in hand and affords ample authority for the conclusion of the court below. In the case of Porter v. Ford, 82 Ky.,

191, 6 Ky. Law Rep., 60, it was held, where a married woman wrote a holographic will, which was necessarily invalid by reason of her coverture, that this paper was sufficiently re-executed after discoverture by the making by the testator of certain changes in its devises and certain indorsements on the envelope which contained it. The court said: "Does the law require more to be done than has been done in this case? We think not. For certa'uly there is no provision in the General Statutes which either in terms or by necessary implication requires the holographic will of a married woman to be re-written or re-subscribed after she becomes discovert in order to make it valid." And in the case of Soward v. Soward, 1 Duv., 126, this principle was declared: "It is furthermore true, as was said in the case of Upchurch v. Upchurch, 16 B. Mon., 112, that 'in every adjudication of this court, involving the publication and attestation of wills, from Cochran's Will Case (3 Bibb, 491) down, a substantial rather than a literal compliance with the statute has been demanded; and if its object and intent were reached without a violation of its express language, that is all that has been required.' This is a just and equitable rule of construction, and should be carefully adhered to."

The will in question was holographic, and, therefore, under the principle enunciated in Porter v. Ford, supra, was not required to be re-written or re-signed; but because it was holographic is no reason that its re-execution might not be manifested by the attestation of the required number of witnesses, just as if it had been written by an amanuensis. The testator held in his hand a paper which transferred his property as he desired. He evidently knew that, as this

paper had been revoked, it was necessary that it should be re-executed. He undertook to do this by having his signature attested by two witnesses, the statutory number. We think what was done was a subustantial compliance with the requirement of the statute; for, after all, it is the intent of the would-be testator that is sought to be carried into effect, and in order to insure that this intent is effectuated, and to guard against the machinations of fraud and the misfortune of mistake, certain outward signs of the inward intent are required by the statute, and when this intent is manifested and fully safeguarded by what is done the statute is satisfied.

The judgment is affirmed.