Margaret McReynolds **WROBLEWSKI** and Beverly Ann Egan, by her Next Friend, Earl F. Martin, Appellants,

v.

Lester E. **YEAGER**, Individually, etc., Appellees.

Court of Appeals of Kentucky.

May 18, 1962.

Rehearing Denied Nov. 9, 1962.

Thomas E. Sandidge, James S. Sandidge and Sandidge & Sandidge, Owensboro, for appellants.

Wilson & Wilson, Jack A. Conner, Owensboro, for appellees.

CULLEN, Commissioner.

A six-page typewritten document, bearing on the last page the signature of the testator

and the attestation of three witnesses, was admitted to probate by the Daviess County Court as the will of James C. Ellis. Two great-grandnieces of Ellis contested the probate by appeal to the circuit court, on the ground that the first five pages of the probated document were not the same pages that were in the will when it was executed. At the conclusion of the evidence the court directed a verdict upholding the probate, and from the judgment entered upon that verdict the contestants have appealed to this Court.

The problem in the case arises from the fact that the attestation clause in the will recited that for the purpose of identifying the first five pages the attesting witnesses had subscribed their initials to each page, but the probated document does not bear any such initials.

Two of the three subscribing witnesses (the third had died before the trial) testified that at the time the will was executed they did not initial the first five pages. The appellants argue that the witnesses did not so testify but merely said that they did not put their initials on any page of the *probated document,* but in our opinion the only fair import of the testimony is that the witnesses did not initial any page of the document that Mr. Ellis executed as a will with their attestation.

The major contentions of the appellants are (1) that the testimony of the subscribing witnesses contradicting the recitation in the attestation clause was not competent; and (2) that even if the testimony was competent it could not as a matter of law overcome the attestation clause but could only create a jury issue.

■ In their first contention the appellants are in error because the law is well settled contrary to the contention. See Poindexter's Adm'r v. Alexander, 277 Ky. 147, 125 S.W.2d 981.

The second contention raises a most difficult question. In the Poindexter case, supra, this Court held that the testimony of an attesting witness contradicting a· positive statement in the attestation clause cannot as a matter of law overcome the prima facie case made out by the attestation clause. Obviously the court in that case took the view that the attestation clause may have some evidentiary effect or weight.

The rationale of the rule stated in the Poindexter case is somewhat difficult to grasp, because it permits a jury to find proper execution of a will on the basis of a statement in the attestation clause even if the attesting witnesses testify that there was no proper execution, whereas, if the attesting witnesses were not put on the stand or were not available, the will could not be probated upon the strength of the attestation clause alone. See Polley v. Cline's Ex'r, 263 Ky. 659, 93 S.W.2d 363; Tackett v. Tackett, 204 Ky. 831, 265 S.W. 336; KRS 394.235.

■ Perhaps the rule can be explained on the basis that although many of the cases appear to hold that at least one of the attesting witnesses, if available, must testify as to the facts of signature or acknowledgment by the testator in the witnesses' presence, and their subscription in his presence, all that actually has been required to be proved by testimony of the attesting witness is the identification of the *signatures.* Proof of compliance with the required formalities of execution may be supplied by testimony of nonattesting witnesses, by a recitation in the attestation clause, or even by a form of presumption. That this is so is illustrated by the decisions in Turner v. Turner, 11 Ky. 101; Howard's Will, 21 Ky. 199; Pate's Adm'r v. Joe, 26 Ky. 113; Gwinn v. Radford, 12 Ky. 137; and McCue v. Turner, 252 Ky. 849, 68 S.W.2d 415. In the Turner case one of the attesting witnesses testified that he and the testator signed in each other's presence and he identified the signatures of the other two attesting witnesses but he could not remember whether they signed in the testator's presence or he in theirs. The court held that there was sufficient proof of proper execu-

tion and spoke of a "violent" presumption that the attestation was proper. In the Howard case one of the three attesting witnesses testified as to facts showing proper execution, while the other two testified that they did not sign in the testator's presence. The court held the will valid. In the Pate, Gwinn and McCue cases the attesting witnesses were able to identify their own signatures on the will but could not remember anything about the circumstances of execution. In each case the court held there was sufficient proof to sustain a verdict upholding the will.

The rule stated in Poindexter's Adm'r v. Alexander, 277 Ky. 147, 125 S.W.2d 981, and in the earlier cases of Allegeyer v. Allegeyer's Ex'rs, 244 Ky. 450, 51 S.W.2d 445, and Caddell's Heirs v. Caddell's Ex'x, 175 Ky. 505, 194 S.W. 541, giving effect to recitations in the attestation clause with respect to compliance with the formalities of execution, is consistent with the proposition that if an attesting witness identifies his signature proof of the proper execution may be supplied from other sources. The attestation clause is treated as an acceptable source of proof because it is a solemn recitation of compliance with the statutory formalities.

It appears that underlying all of the foregoing decisions there is a basic policy favoring the upholding of the validity of wills wherever reasonably possible. Where the attestation clause has been resorted to it has been for the purpose of upholding the will.

■ the instant case, however, the contestants seek to use the attestation clause to *invalidate* the will offered for probate. And the recitation they rely upon does not relate to the required formalities of execution, but to a matter concerning which the attesting witnesses had no duty or obligation. The subscribing witnesses to a will are called upon only to attest the *signature* of the testator and they are not required to know that the document is a will or what are

its contents. Flood v. Pragoff, 3 K.L.R. 372, 79 Ky. 607; P'Pool's Ex'r v. P'Pool's Ex'x, 121 Ky. 588, 89 S.W. 687.

■ There may be some reason for giving evidentiary weight to a recitation in the attestation clause that the subscribing witnesses did what the law requires of them, but not so with respect to a recitation of gratuitous acts not required of the witnesses. In either case the attestation clause is merely hearsay. Where the clause recites compliance with statutory formalities of execution it seems to have been held admissible under some kind of exception to the hearsay rule, based upon a policy favoring the upholding of wills. There is no policy warranting an exception for hearsay statements concerning acts not required of the subscribing witnesses.

■ ■ course if the proponents of the will had the burden of proving, by the attesting witnesses, the authenticity of the pages of the will offered for probate, the recitation in the attestation clause would be admissible to *impeach* or *contradict* the testimony of the attesting witnesses. But in our opinion the proponents of the Ellis will, under the circumstances of this case, had no burden to show by testimony of the attesting witnesses that the pages of the will were authentic, so the contestants could not create a jury issue simply by means of impeaching the testimony of the attesting witnesses.

■ ■ will as offered for probate had all appearances of authenticity. The pages were stapled together and their sequence and the continuity of language and thought indicated that the pages were coherent parts of one original document. There was nothing in the case, other than the recitations in the attestation clause, to raise any serious doubts about the authenticity of the first five pages of the will. Under these circumstances, in our opinion, the contestants had the burden of proving that there had been a substitution of pages. See Keifer's Ex'r and Ex'x v. Diebel, 292 Ky. 318, 166 S.W.2d

430; 95 C.J.S. Wills § 384, p. 272; Roche v. Nason, 105 App.Div. 256, 93 N.Y.S. 565.

 To sustain their burden the contestants had only the recitation in the attestation clause which, for the reasons hereinabove stated, could not constitute *direct* evidence but only impeaching evidence. There being no direct evidence in the case that the pages of the will were initialed at the time of execution, the contestants are left with no proof to support their claim that the pages of the probated will are not authentic. Cf. Hopson v. Ewing, Ky., 353 S.W.2d 203.

The judgment is affirmed.